

DA 11-0026

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 271

RAY WILLIAMS,

        Plaintiff and Appellant,

   v.

PLUM CREEK TIMBER COMPANY, INC.,
and JOHN DOES 1 THROUGH 5,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                  In and For the County of Flathead, Cause No. DV-07-487(C)
                  Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Santana N. Kortum, Kortum Law Office, PLLC, Kalispell, Montana

        For Appellee:

                Todd A. Hammer, Angela K. Jacobs, Hammer, Hewitt, Jacobs
                & Quinn, PLLC, Kalispell, Montana

                        Submitted on Briefs:  September 22, 2011

                                  Decided:  November 1, 2011

Filed:

               _____
                          Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Ray Williams brought this action in the District Court for the Eleventh Judicial District, Flathead County, alleging that he was wrongfully discharged from Plum Creek Timber Company (Plum Creek). Plum Creek moved for summary judgment contending that it had good cause to terminate Williams. The court granted Plum Creek's motion and Williams appeals. We reverse and remand for further proceedings consistent with this Opinion.

¶2    Williams raises the following issue on appeal: Whether the District Court erred in granting Plum Creek's Motion for Summary Judgment based on its determination that Williams was not wrongfully discharged from his employment.

**Factual and Procedural Background**

¶3    Williams went to work for Plum Creek in its Columbia Falls mill in 1988. Over the next 18 years he held various positions and performed numerous tasks and assignments. In the spring of 2006, Plum Creek determined that it could no longer supply enough logs to run its Columbia Falls mill at eight hours production capacity per week. To keep the mill profitable and to avoid layoffs, Plum Creek decided to reassign 25 employees to other mills.

¶4    The determination as to which employees would be reassigned was based on a written pre-transfer evaluation form which graded employees in four categories: discipline, versatility, attendance and skill. Employees were given a score of one, two or three points in each category. The scores were then averaged and the employees with the highest averages were transferred to other mills or plants. While the reassigned

2

employees retained their same rates of pay as well as their company seniority for vacation and retirement benefits, they lost their plant seniority.

¶5 The category of discipline was assessed as follows: employees with no disciplinary actions received one point; employees with a minor disciplinary action, such as a verbal warning, received two points; and employees with a major disciplinary action, such as a written warning or suspension, received three points. Williams received one point in this category.

¶6 The category of versatility was assessed as follows: employees who could operate three or more machines received one point; employees who could operate two or more machines or who could operate one machine and grade lumber or scale received two points; and employees who could not operate any machines, grade lumber or scale received three points. Williams received three points in this category which he asserts was error on Plum Creek's part. He contends that he should have received only one point in this category because he had experience grading lumber and he could operate seven machines including a planer hoist, feeder, sorter, paper wrapper, paper-wrapper feeder, fork lift and stacker.

¶7 The category of attendance was assessed as follows: employees who missed fewer than 16 hours in the preceding 12 months received one point; employees who missed between 16 and 32 hours in the preceding 12 months received two points; and employees who missed more than 32 hours in the preceding 12 months received three points. Williams received two points in this category; however, Plum Creek admits that it

3

incorrectly assessed Williams' attendance record and that he should have received only one point.

¶8 And finally, the category of skill was assessed as follows: employees who were hourly supervisors, graders, stocker operators, head scalers, or primary sawmill operators received one point; employees who were machine operators received two points; and employees who were laborers, chain pullers or trim pickers received three points. Williams received three points in this category. He contends that this was error as he graded lumber everyday and he had the ability to operate at least seven different machines.

¶9 Williams was reassigned to Plum Creek's Evergreen Plywood Mill on April 11, 2006, where he was placed on a 90-day probationary period. Since he was a reassigned employee and had no seniority at the Evergreen mill, the only position he was eligible for was as a plugger operator. This position involves taking out defects and knots in sheets of plywood so that they will meet certain quality standards and grades. Williams had no experience in this job and, although he improved over time, he failed to perform at a fast enough pace to satisfy his supervisors. Plum Creek terminated Williams' employment at the end of his probationary period, July 12, 2006.

¶10 Williams brought this action under the Wrongful Discharge from Employment Act (Title 39, chapter 2, part 9, MCA) alleging that Plum Creek violated the express provisions of its written employment policies by failing to apply those policies consistently and equally to all employees. Williams further alleged that Plum Creek violated those policies by reassigning him to a new plant based on an erroneous

evaluation, wrongfully demoting him to a position in which he had no experience, and, ultimately, terminating his employment.

¶11 Plum Creek moved for summary judgment contending that it had good cause to terminate Williams and that it did not violate its employment policies by doing so. In support of its contentions, Plum Creek points out that Williams' inability to meet production standards at the Evergreen mill was good cause for his termination. Plum Creek also points out that its Hourly Employee Handbook provides that although performance issues would be communicated to probationary employees, such employees could be terminated without progressing through every step set forth in the disciplinary guidelines.

¶12 The District Court granted Plum Creek's Motion for Summary Judgment on the basis that no wrongful discharge took place since Williams was discharged for good cause. Williams appeals the District Court's order and judgment.

**Standard of Review**

¶13 We review a district court's grant or denial of a motion for summary judgment de novo and apply the same criteria under M. R. Civ. P. 56 as applied by the district court. *Stowers v. Community Medical Center, Inc.*, 2007 MT 309, ¶ 10, 340 Mont. 116, 172 P.3d 1252 (citing *North 93 Neighbors, Inc. v. Bd. of County Com'rs*, 2006 MT 132, ¶ 17, 332 Mont. 327, 137 P.3d 557). M. R. Civ. P. 56(c)(3) provides that summary judgment should only be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

5

¶14 Furthermore, the party moving for summary judgment must demonstrate that no genuine issues of material fact exist. *Hickey v. Baker School Dist. No. 12*, 2002 MT 322, ¶ 12, 313 Mont. 162, 60 P.3d 966 (citing *Casiano v. Greenway Enterprises, Inc.*, 2002 MT 93, ¶ 13, 309 Mont. 358, 47 P.3d 432, *overruled in part and on other grounds by Giambra v. Kelsey*, 2007 MT 158, 338 Mont. 19, 162 P.3d 134). Once this has been accomplished, the burden then shifts to the non-moving party to prove by more than mere denial and speculation that a genuine issue of material fact does exist. *Roy v. Blackfoot Telephone Co-op.*, 2004 MT 316, ¶ 11, 324 Mont. 30, 101 P.3d 301 (citing *Fulton v. Fulton*, 2004 MT 240, ¶ 6, 322 Mont. 516, 97 P.3d 573). "A 'material' fact is a fact that 'involves the elements of the cause of action or defenses at issue to an extent that necessitates resolution of the issue by a trier of fact.' " *Arnold v. Yellowstone Mountain Club, LLC*, 2004 MT 284, ¶ 15, 323 Mont. 295, 100 P.3d 137 (citing *Mountain West Bank, N.A. v. Mine and Mill*, 2003 MT 35, ¶ 28, 314 Mont. 248, 64 P.3d 1048).

¶15 In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the party opposing summary judgment. *Prindel v. Ravalli County*, 2006 Mont. 62, ¶ 19, 331 Mont. 338, 133 P.3d 165 (citing *Lopez v. Great Falls Pre-Release Services*, 1999 MT 199, ¶ 16, 295 Mont. 416, 986 P.2d 1081). In addition, we review the legal conclusions made by a district court to determine whether the court erred. *Andrews v. Plum Creek Mfg, LP.*, 2001 MT 94, ¶ 5, 305 Mont. 194, 27 P.3d 426 (citing *Bruner v. Yellowstone County*, 272 Mont. 261, 265, 900 P.2d 901, 903 (1995)).

**Discussion**

¶16 *Whether the District Court erred in granting Plum Creek's Motion for Summary Judgment based on its determination that Williams was not wrongfully discharged from his employment.*

¶17 Williams argues on appeal that the District Court erred in granting Plum Creek's Motion for Summary Judgment because questions of material fact still exist with respect to whether the pre-transfer evaluation form was part of Plum Creek's written personnel policy; whether Plum Creek violated its written personnel policy in demoting and transferring Williams; whether this allegedly wrongful demotion was directly related to Williams' termination; and, ultimately, whether Williams was wrongfully discharged. In response, Plum Creek asserts that Williams' reassignment to another mill had nothing to do with his subsequent discharge. Plum Creek maintains that Williams was discharged for good cause because he did not satisfactorily perform his job duties.

¶18 The Wrongful Discharge from Employment Act (WDEA) is the exclusive remedy for a wrongful discharge from employment in Montana. *Mysse v. Martens*, 279 Mont. 253, 267, 926 P.2d 765, 774 (1996) (citing § 39-2-902, MCA). The WDEA defines "discharge" to include a constructive discharge "and any other termination of employment, including resignation, elimination of the job, layoff for lack of work, failure to recall or rehire, and any other cutback in the number of employees for a legitimate business reason." Section 39-2-903(2), MCA. A "legitimate business reason" is a reason "that is neither false, whimsical, arbitrary or capricious, and it must have some logical relationship to the needs of the business." *Andrews*, ¶ 18 (quoting *Buck v. Billings Montana Chevrolet, Inc.*, 248 Mont. 276, 281-82, 811 P.2d 537, 540 (1991)). We have recognized that "economic reasons are legitimate business reasons justifying discharge of

7

an employee." *Andrews*, ¶ 18 (quoting *Cecil v. Cardinal Drilling Co.*, 244 Mont. 405, 409, 797 P.2d 232, 234 (1990)).

¶19    "Constructive discharge," on the other hand, is defined as "the voluntary termination of employment by an employee because of a situation created by an act or omission of the employer which an objective, reasonable person would find so intolerable that voluntary termination is the only reasonable alternative." Section 39-2-903(1), MCA. However, "[c]onstructive discharge does not mean voluntary termination because of an employer's refusal to promote the employee or improve wages, responsibilities, or other terms and conditions of employment." Section 39-2-903(1), MCA.

¶20    A discharge is wrongful under the WDEA only if:

> (a) it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy;
> (b) the discharge was not for good cause and the employee had completed the employer's probationary period of employment; or
> (c) the employer violated the express provisions of its own written personnel policy.

Section 39-2-904(1), MCA. And, "good cause" is defined in the WDEA as "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason." Section 39-2-903(5), MCA.

¶21    In the instant case, Plum Creek contends that either a discharge or a constructive discharge is a prerequisite to asserting a wrongful discharge claim under the WDEA. Plum Creek argues that reassigning Williams to another mill was not a discharge and, since Williams did not voluntarily resign at that time, neither can it be considered a

8

constructive discharge. Plum Creek further argues that Williams' decision to remain employed cut off any liability that could fall upon Plum Creek for exercising its right to reassign him. Thus, according to Plum Creek, the only discharge in this case was Williams' discharge for failing to meet the production standards required for his new position at the Evergreen mill, and it is undisputed that that discharge was for good cause. Therefore, Plum Creek maintains that Williams has no claim under the WDEA.

¶22 In contrast, Williams argues that Plum Creek erroneously focuses on whether it had good cause to terminate Williams *after* his demotion and transfer to the Evergreen mill instead of focusing on the actions Plum Creek took that *led up to* Williams' demotion and transfer. To that end, Williams asserts that Plum Creek's earlier actions are directly linked to his subsequent termination. Hence, Williams contends that he was wrongfully discharged because Plum Creek violated its own written personnel policy by inaccurately rating Williams under the reassignment criteria and thereby causing his demotion, transfer and subsequent termination.

¶23 Plum Creek relies on our decisions in *Pankratz Farms, Inc. v. Pankratz*, 2004 MT 180, 322 Mont. 133, 95 P.3d 671, and *Clark v. Eagle Systems, Inc.*, 279 Mont. 279, 927 P.2d 995 (1996), to support its contentions that Williams' decision to accept a position at the Evergreen mill rather than resigning precludes Williams' claim under the WDEA and cuts off any liability that could fall upon Plum Creek for reassigning Williams. However, we conclude that our decisions in these two cases do not support these contentions.

¶24 *Pankratz* concerns a dispute between the partners and shareholders in a family farming and ranching operation. Walter Pankratz owned a grain farming and cattle

9

ranching enterprise which he incorporated in 1975 for estate planning purposes. Walter subsequently acquired additional farm and ranch lands, and as the enterprise grew, all six of Walter's sons became active in the business. *Pankratz*, ¶¶ 17-19.

¶25 In 1978, the six brothers entered into a written partnership agreement to formalize their operations and to become eligible for certain federal funding. The partnership agreement provided for equal sharing of profits and losses, and required unanimous agreement on all actions or decisions affecting the partnership. Dissension among the brothers began to surface in the mid to late 1980s, and they became noticeably divided. In 1991, the partnership agreement was amended to provide for actions and decision-making by a 2/3 vote of the partners. *Pankratz,* ¶¶ 20-23.

¶26 Beginning in 1995, the brothers entered into a series of negotiations for the purchase of the interests in the partnership and corporation of two of the brothers, including Marvin, the eldest brother. Marvin rejected each of the proposed buyouts. In early May 1997, the corporation reduced the salaries of its employees, including Marvin, from $500 per month to $50 per month. Marvin was also assigned several operational tasks. Marvin performed some, but not all, of the assigned tasks. On June 23, 1997, Marvin received a notice formally terminating his employment for failing to perform the assigned tasks. *Pankratz,* ¶¶ 26-30. Additional problems with the partnership and the corporation ensued and, eventually, both sides initiated legal action. *Pankratz*, ¶¶ 37-38.

¶27 The only action pertinent to our discussion here is Marvin's claim for wrongful discharge. As to that claim, the majority partners argued that they were justified in terminating Marvin's employment because he refused to perform various tasks assigned

10

to him. However, Marvin argued that the corporations' issuance of pay cuts in May 1997 constituted a breach of his employment agreement and effectively terminated his employment well before he received formal notice of his discharge for cause the following June. Based on that rationale, Marvin claimed that his termination was wrongful under the WDEA. The District Court denied Marvin's claim. *Pankratz*, ¶ 71.

¶28 On appeal, this Court determined that while Marvin received a greatly diminished salary for his services, the record showed that the salary cuts were consistent with the corporation's past practices of reducing salaries for economic purposes, and that the salary cuts affected each of the partners equally. Thus, we held that Marvin's argument that the corporation effectively terminated his employment when it issued the salary cuts was without merit because Marvin remained in the active employ of the corporation. We also held that because good cause existed for Marvin's termination from employment the following June when he refused to perform the tasks assigned to him, the district court did not err in dismissing his claim for wrongful discharge. *Pankratz*, ¶¶ 73-74.

¶29 *Pankratz* is distinguishable from the instant case because there was nothing directly linking the salary cuts in that case to Marvin's later discharge for refusing to perform the tasks assigned to him since the record in *Pankratz* showed that the salary cuts were consistent with the corporation's past practices and affected each of the partners equally. Not so in the case *sub judice* where there are disputed issues of material fact regarding whether Plum Creek's alleged violations of the express provisions of its written personnel policy were directly linked to Williams' discharge based on Plum Creek's alleged failure to apply that policy consistently and equally to all of its employees.

11

¶30    Likewise, we cannot conclude that *Clark* is supportive of Plum Creek's contention that Williams' has no claim under the WDEA. In *Clark*, Eagle Systems contracted with Burlington Northern Railroad (BN) to provide ramp, drayage, and mechanical services for BN at its Billings terminal. Eagle Systems was also responsible for loading and unloading trains in a timely manner. Clark was employed with Eagle Systems as the terminal manager from 1985 until November 21, 1991. On that date, Clark's supervisor notified Clark that he was being replaced the next day as terminal manager and that he was being demoted to the position of utility person. *Clark*, 279 Mont. at 282, 927 P.2d at 997. Clark reported for work the following morning and worked as a utility person until several months later when he became disabled and was no longer able to perform his duties. *Clark*, 279 Mont. at 285, 927 P.2d at 998.

¶31    Clark filed a complaint alleging a cause of action for age discrimination against Eagle. The district court concluded that the WDEA applied in this case because a jury might conclude that Clark's demotion qualified as a discharge within the meaning of the WDEA. Nevertheless, the court concluded that there was good cause for Clark's reclassification and granted Eagle's motion for summary judgment on that basis. *Clark*, 279 Mont. at 283-84, 927 P.2d at 997-98.

¶32    We held on appeal in *Clark* that the district court reached the correct result even though it did so for the wrong reasons. Contrary to the district court's determination, we held that under § 39-2-904, MCA, the WDEA was inapplicable because there was no termination of Clark's employment. *Clark*, 279 Mont. at 285-86, 927 P.2d at 999.

12

¶33 We conclude that *Clark* is distinguishable from the instant case because unlike Williams who was terminated shortly after his demotion and transfer, Clark was never terminated from his employment. Consequently, we find no merit in Plum Creek's contention that Williams has no claim under the WDEA.

¶34 Citing *McConkey v. Flathead Electric Co-op.*, 2005 MT 334, ¶ 26, 330 Mont. 48, 125 P.3d 1121, Plum Creek asserts that an employer has the right to exercise discretion over who it will employ and keep in employment, and that it is inappropriate for courts to become involved in the day-to-day employment decisions of a business. While this is generally true, the law requires that an employer may not discharge an employee for other than good cause or violate the express provisions of its own written personnel policy in discharging said employee. Section 39-2-904(1), MCA.

¶35 Plum Creek also asserts that Williams was not "demoted" as he did not suffer any loss in pay. However, the term "demotion" does not only mean a loss in pay, it also means "to reduce to a lower grade or rank." *Webster's New American Dictionary* 139 (Merriam-Webster, Inc. 1995). Here, Williams lost his plant seniority status and, because of that loss, the only job available to him at the Evergreen mill was as a plugger operator. In addition, Williams was put on a 90-day probationary period even though he had been with Plum Creek for 18 years. Regardless of whether it is referred to as a "demotion" or as a "reassignment," there still remains a disputed issue of material fact regarding the accuracy of Williams' rating on the pre-transfer evaluation form which led to his transfer and subsequent termination.

13

¶36   Plum Creek notes in its brief on appeal that it does have written personnel policies that apply to all hourly employees; however, Plum Creek claims it did not violate those policies in reassigning Williams to another mill.  Plum Creek maintains that it's written personnel policies are contained in the Hourly Employee Handbook which provides in part that "Plum Creek reserves the right to transfer employees to other jobs for [reasons] which include but are not limited to planning, production, efficiency, discipline and training . . . ."

¶37   Nevertheless, Williams argues that Plum Creek instituted a new written policy, its pre-transfer evaluation form, to determine *which* employees should be transferred to other facilities.  Thus, Williams contends that whether this evaluation form may be considered part of Plum Creek's written personnel policies presents a disputed issue of material fact that must be decided by a jury.  He also contends that whether Plum Creek violated the express provisions of that personnel policy by failing to apply it consistently and equally to all employees presents an additional disputed issue of material fact.

¶38   We held in *Kearney v. KXLF Communications, Inc.*, 263 Mont. 407, 869 P.2d 772 (1994), that a written personnel policy does not necessarily have to be an employee handbook.  In that case, employer KXLF notified employee Kearney that he was being removed as news director and given the position of sports director instead.  Kearney resigned and filed suit contending that he was constructively discharged and that KXLF had violated its personnel policy by not providing him with annual evaluations before his discharge.  *Kearney*, 263 Mont. at 411-12, 869 P.2d at 774.  Because Kearney's expert witness had to interpolate the existence of a written personnel policy from several

14

writings, the district court determined that KXLF did not have an express written policy and dismissed the part of Kearney's WDEA claim that was based on a violation of a written personnel policy. *Kearney*, 263 Mont. at 417, 869 P.2d at 778.

¶39 On appeal, this Court pointed out that Kearney's expert witness testified that KXLF had a written policy of performing annual evaluations based upon the existence of pre-printed evaluation forms and an internal memo. In reversing the District Court, this Court held that "[i]n this instance, Kearney was entitled to have a jury determine whether he met the threshold requirement of showing that KXLF's personnel policy expressly required annual evaluations of all its employees." *Kearney*, 263 Mont. at 418, 869 P.2d at 778.

¶40 In this case, the record indicates that Plum Creek does have a written personnel policy. The record also indicates that Plum Creek used a written pre-transfer evaluation form to grade each of its employees on various criteria to determine which employees should be demoted and transferred. Viewing the evidence in Williams' favor as the non-moving party, *Prindel*, ¶ 19, we conclude that conflicting inferences could be drawn from this evidence and that reasonable persons could conclude that the evaluation form was part of Plum Creek's written personnel policy, that Plum Creek violated the express provisions of that policy by failing to apply it consistently and equally to all of its employees, that Plum Creek wrongfully demoted and transferred Williams, and that this demotion and transfer was directly linked to Williams' discharge. *See Hager v. J.C. Billion, Inc.*, 2008 MT 167, ¶ 22, 343 Mont. 353, 184 P.3d 340 (whether a demotion constitutes a discharge is a question of fact for a jury to decide).

15

¶41 We have repeatedly held that summary judgment is an extreme remedy and should never be substituted for a trial if a material factual controversy exists. *Spinler v. Allen*, 1999 MT 160, ¶ 16, 295 Mont. 139, 983 P.2d 348 (citing *Montana Metal Buildings, Inc. v. Shapiro*, 283 Mont. 471, 474, 942 P.2d 694, 696 (1997)). Fact finding is the province of the jury at trial, not that of the district court on summary judgment. " '[W]eighing the evidence is . . . a classic jury function' and we are reluctant to remove that function from the jury's purview." *Andrews*, ¶ 21 (quoting *Braulick v. Hathaway Meats, Inc.*, 1999 MT 57, ¶ 14, 294 Mont. 1, 980 P.2d 1). Consequently, if there is any doubt as to the propriety of a motion for summary judgment, it should be denied. *Rogers v. Swingley*, 206 Mont. 306, 312, 670 P.2d 1386, 1389 (1983); *Cheyenne Western Bank v. Young*, 179 Mont. 492, 496, 587 P.2d 401, 404 (1978).

¶42 We hold in this case that the District Court erred in granting Plum Creek's Motion for Summary Judgment as disputed issues of material fact still exist. *See Hager*, ¶ 22 (whether an employer violated its own written policies is a question of fact for the jury); *Andrews*, ¶¶ 21-22 (summary judgment held to be inappropriate where the evidence established the possibility of a wrongful discharge).

¶43 Reversed and remanded for further proceedings consistent with this Opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ JIM RICE