DA 12-0267

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2012 MT 292

MUSSELSHELL COUNTY, a Political
Division of the State of Montana,

        Plaintiff and Appellant,

  v.

YELLOWSTONE COUNTY, a Political Division of the
State of Montana; and STATE OF MONTANA ex rel.
DEPARTMENT OF REVENUE,

        Defendants and Appellees.

| | |
|---|---|
| APPEAL FROM: | District Court of the First Judicial District,<br>In and For the County of Lewis and Clark, Cause No. BDV-2010-836<br>Honorable Jeffrey M. Sherlock, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

           R. Allan Payne, Marc G. Buyske; Doney Crowley Payne Bloomquist P.C.,
           Helena, Montana

      For Appellees:

           Daniel L. Schwarz, Chief Deputy Yellowstone County Attorney,
           Billings, Montana

           Teresa G. Whitney, Special Assistant Attorney General, Montana
           Department of Revenue, Helena, Montana

Submitted on Briefs: November 14, 2012

Decided: December 18, 2012

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Musselshell County appeals from the District Court's order entered February 3, 2012, affirming the Montana Department of Revenue's apportionment of the coal gross proceeds tax from the Bull Mountains Mine. We affirm.

¶2 Musselshell County presents the following issues for review:

¶3 Issue One: Whether the District Court erred in affirming the Montana Department of Revenue's apportionment of the coal gross proceeds tax from the Bull Mountains Mine between Musselshell County and Yellowstone County.

¶4 Issue Two: Whether the District Court erred in determining that the Montana Department of Revenue was not required to adopt rules under the Administrative Procedure Act prior to apportioning the coal gross proceeds tax from the Bull Mountains Mine between Musselshell County and Yellowstone County.

## PROCEDURAL AND FACTUAL BACKGROUND

¶5 The Bull Mountains Mine is an underground coal mine operated by Signal Peak Energy, with its surface facilities located in Musselshell County. It is the only underground coal mine in Montana. At the Bull Mountains Mine, the coal is severed from the underground coal vein, crushed and then brought to the surface. There it is crushed again, stockpiled, and ultimately loaded onto rail cars for transportation to market. In 2009 the mine extended underground into Yellowstone County, and produced coal mined from both Musselshell County and Yellowstone County. As required by law

2

(§ 15-23-701, MCA) the mine operator reported to the Department of Revenue the number of tons and the value of coal mined in each county for the 2009 tax year.

¶6    The coal gross proceeds tax is one of several Montana taxes associated with coal mining, and the revenues benefit counties.  It is administered by the Department of Revenue and is levied pursuant to §§ 15-23-701, -702, and -703, MCA, at a rate of five percent of the contract sales price of the coal.[1]  "Contract sales price" is the "price of coal extracted and prepared for shipment f.o.b. mine. . . ."  Section 15-35-102(5), MCA. "Prepared for shipment" includes "in-mine movement, crushing, sizing, screening, storing, mixing, loading, treatment with substances including chemicals or oils, and other preparation of the coal for disposition."  Section 15-35-102(7), MCA.  The acronym "f.o.b." is not defined in the statute but is understood in the industry to mean "freight on board" a coal train at the mine.

¶7    Based upon quarterly reports of mine operators, the Department notifies the appropriate county or counties of the value of the coal gross proceeds and the amount of the tax that may be collected by each county.  The county then collects the gross proceeds tax from the mine operator.  For the 2009 tax year, the Bull Mountains Mine taxable coal gross proceeds were $9,110,535.  Based upon the operator's report of the counties from which the coal was mined, the Department allocated $6,572,340 to Musselshell County, for a tax of $328,617; and allocated $2,538,195 to Yellowstone County for a tax of $126,909.

---

[1] New underground mines and some others are currently taxed at a temporary rate of 2.5% of the value of the coal.  Section 15-23-703(c), MCA.

3

¶8 Musselshell County sued Yellowstone County and the Department, seeking a declaratory judgment that the Department wrongfully allocated a portion of the tax to Yellowstone County. All parties moved for summary judgment. The District Court upheld the Department's apportionment of the tax between the two counties, holding that Montana law contemplates taxation of the gross proceeds of coal in the county where the coal is mined and that the Department was not required to adopt administrative rules prior to apportioning the tax. Musselshell County appeals.

## STANDARD OF REVIEW

¶9 This Court reviews a decision on summary judgment de novo, using the same criteria as the district court under M. R. Civ. P. 56, and reviews conclusions of law to determine whether they are correct. *Williams v. Plum Creek Timber Co.*, 2011 MT 271, ¶¶ 13, 15, 362 Mont. 368, 264 P.3d 1090.

## DISCUSSION

¶10 Issue One: Whether the District Court erred in affirming the Montana Department of Revenue's apportionment between Musselshell County and Yellowstone County of the coal gross proceeds tax from the Bull Mountains Mine. The ultimate issue in this case is whether the coal gross proceeds tax should be apportioned between Musselshell County and Yellowstone County based upon the tons of coal taken from each county. Several statutes bear upon this issue.

¶11 Mined coal, for purposes of the coal gross proceeds tax, is centrally assessed by the Department of Revenue under § 15-23-101(5), MCA. The statute covers a wide range of taxable activities that are "operated in more than one county," including

4

railroads, power lines, pipelines, canals, airlines, and the gross proceeds of coal mines. Section 15-23-105, MCA, provides that the Department must "apportion the value" of such property "among the counties in which such property is located." If the property is such that it cannot be apportioned on the basis of mileage or original installed cost (and the parties agree that this is the case with coal), then the Department "may adopt such other method or basis of apportionment as may be just or proper." Section 15-23-105, MCA. The Legislature's statement of intent adopted with this statute provides that "it is the intent of the legislature that apportionments made under this act shall substantially correspond with the location of such property." *Compiler's Comments* to § 15-23-105, MCA. Admin. R. M. 42.22.122 provides for the apportionment of centrally assessed property among the "taxing units" based upon the location of the property. Section 15-23-106, MCA, requires the Department to prepare an annual statement for each county listing the assessed value of multi-county property, including "the assessed value of the gross proceeds from coal mines, as described in 15-23-701." Those values are entered in the property tax record for each county. Section 15-23-702, MCA.

¶12 Title 15, Ch. 23, pt. 7, MCA, contains the statutes specifically applicable to the coal gross proceeds tax. Section 15-23-701, MCA, requires each person mining coal to report yearly to the Department a statement showing the "gross yield from each coal mine" along with the location of the mine, the tons of coal extracted, treated or sold, and the gross yield in dollars derived from the contract sales price. Section 15-35-102(5), MCA, defines "contract sales price" as the "price of coal extracted and prepared for

shipment, f.o.b. mine. . . ."[2]  Section 15-23-702, MCA, requires the Department to yearly "enter the valuation of the gross proceeds of coal mines in the property tax record for each county in which the mines are located."  A "coal mine" is defined elsewhere in the statutes as "all parts of the property of a mining plant under one management that contribute, directly or indirectly, to the mining or handling of coal."  Section 50-73-102(3), MCA.  Section 15-23-703(1), MCA, provides that the Department must levy a tax of 5% against the "gross yield or value . . . derived from the contract sales price" of the coal, as referred to in § 15-23-701, MCA.

¶13    Yellowstone County and the Department contend that these provisions, and particularly § 15-23-702, MCA, specifically provide for the apportionment of the coal gross proceeds tax to "each county in which the mines are located."  Since it is undisputed that the Bull Mountains Mine is located partially in Yellowstone County, they contend that Yellowstone County is entitled to an apportionment of the tax on the proceeds of the Bull Mountains Mine.

¶14    Musselshell County argues that it is entitled to all the coal gross proceeds tax from the Bull Mountains Mine because the tax is based upon a value of the coal when it is "extracted and prepared for shipment f.o.b. mine" (§ 15-35-102(5), MCA) and that process happens in Musselshell County.  Musselshell County argues that the taxable coal proceeds are personal property subject to taxation in the location where they are valued.  Finally, Musselshell County argues that since coal gross proceeds are classified as

---

[2]  Although it is codified with the statutes relating to the Coal Severance Tax, the definition of "contract sales price" in § 15-35-102(5), MCA, is specifically referenced in the statutes relating to the coal gross proceeds tax, § 15-23-701(4), MCA.

6

centrally assessed property, § 15-23-101, MCA, the Department may only apportion them among counties by a method that is "just or proper." Section 15-23-105, MCA. Therefore, Musselshell County contends that the Department can make such an allocation only after adopting administrative rules governing the determination of what constitutes a just or proper apportionment, considering the impacts of the mining on the counties involved.

¶15 The District Court held that the statutes and regulations applicable to the coal gross proceeds tax require that the tax be apportioned among the counties where the mineral deposit is located and severed. In the absence of any clear legislative direction or case law to the contrary, the District Court concluded that coal taken from under Yellowstone County should be subject to the coal gross proceeds tax in that county. The District Court concluded that the Department's apportionment was required by the applicable statutes and was therefore "just or proper" for purposes of § 15-23-105, MCA, and was not arbitrary and capricious.

¶16 The District Court correctly upheld the Department's apportionment of the coal gross proceeds tax of the Bull Mountains Mine. It is clear that the Legislature intended for the coal gross proceeds tax to be apportioned between or among the counties where the mine is located. Section 15-23-101, MCA, governing centrally assessed properties, specifically recognizes that coal mines can be operated in more than one county. Section 15-23-105, MCA, requires the Department to apportion the value of such property among the counties in which the property is located. The Legislature provided a specific statement of its intent under § 15-23-105, MCA, that apportionments "substantially

7

correspond with the location of such property." Section 15-23-702, MCA, applicable solely to the coal gross proceeds tax, requires the Department to enter the value of the taxable gross proceeds "in the property tax record for each county in which the mines are located." It is clear under § 50-73-102(3), MCA, that all parts of the Bull Mountains Mine operation, including those parts under Yellowstone County, are part of the same "coal mine."

¶17 By contrast, there is no statutory provision that supports allocation of the coal gross proceeds tax from the Bull Mountains Mine solely to Musselshell County. The role of the courts is to apply the plain language of the statutes, as the District Court did in this case. Section 1-2-101, MCA; *Friends of the Wild Swan v. DNRC*, 2005 MT 351, ¶ 13, 330 Mont. 186, 127 P.3d 394. The District Court properly concluded that the coal gross proceeds tax from the Bull Mountains Mine should be apportioned between Musselshell County and Yellowstone County.

¶18 Issue Two: Whether the District Court erred in determining that the Montana Department of Revenue was not required to adopt rules under the Administrative Procedure Act prior to apportioning the coal gross proceeds tax from the Bull Mountains Mine between Musselshell County and Yellowstone County.

¶19 Musselshell County argues that if apportionment between the counties is required, the Department must first adopt rules under the Montana Administrative Procedure Act, Title 2, Ch. 4, MCA, to describe its "implementation" of a "just or proper" apportionment. Section 15-23-105, MCA, provides that if property cannot be apportioned between counties on the basis of mileage or original installed cost, then the

8

Department "may adopt such other method or basis of apportionment as may be just or proper." Musselshell County contends that the Department did not properly adopt a "just or proper" apportionment method when it apportioned the coal gross proceeds tax based upon the county from which the coal was mined without complying with the rulemaking procedures of Montana law. *See e.g.* §§ 2-4-301 through -315, MCA.

¶20 The District Court held that the Department's apportionment of the tax was required by applicable law, as discussed above, and was therefore "just or proper" per se because the Department had followed the plain provisions of the law. The District Court concluded that the Department was "not required to make an administrative rule clarifying [the law], as the statutes and applicable administrative rules are clear." The District Court properly concluded that the Department was not required to adopt an administrative rule before it could administer the clear provisions of the statutes. A valid administrative rule must be consistent with the underlying statute, and must be "reasonably necessary to effectuate the purpose of the statute." Section 2-4-305(6), MCA; *Board of Barbers v. Big Sky College of Barber-Styling*, 192 Mont. 159, 161, 626 P.2d 1269, 1270 (1981). Here the statutes are clear and there was no reasonable necessity requiring the Department to adopt a rule interpreting the "just or proper" language in § 15-23-105, MCA, as it applies to the coal gross proceeds tax.

¶21 In addition, the Department has adopted rules applicable to the coal gross proceeds tax. Admin. R. M. 42.25.501 through .515. The Department also has a rule implementing §§ 15-23-101 and -105, MCA. Admin. R. M. 42.22.122 provides for

9

apportionment of centrally assessed facilities "to the taxing units in which the property is situated."

## CONCLUSION

¶22    For the reasons stated, the Department of Revenue correctly apportioned the coal gross proceeds tax from the Bull Mountains Mine between Musselshell County and Yellowstone County, and was not required by law to create an administrative rule before making that apportionment.  The District Court is affirmed.


/S/ MIKE McGRATH


We concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE