FILED

December 22 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0029

DA 15-0029

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 346

DAVID HASTIE,

      Plaintiff, Appellant, and Cross-Appellee,

    v.

ALPINE ORTHOPEDICS & SPORTS
MEDICINE and DR. MARK DEIBERT,

      Defendants, Appellees, and Cross-Appellants.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                  In and For the County of Gallatin, Cause No. DV 12-746A
                  Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Geoffrey C. Angel, Angel Law Firm, Bozeman, Montana

      For Appellees:

          Mark S. Williams, Peter B. Ivins, Williams Law Firm, P.C.,
          Missoula, Montana

                            Submitted on Briefs:  November 4, 2015
                                  Decided:  December 22, 2015

Filed:

                                     _____
                                             Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1     Plaintiff David Hastie (Hastie) underwent foot surgery in October 2010. Defendant Dr. Mark Deibert (Deibert) of Alpine Orthopedics & Sports Medicine (Alpine) in Bozeman performed the surgery. Following the surgery, Dr. Deibert placed Hastie in an orthotic boot and asked him to return for post-operative care. After two post-operative appointments, Hastie did not return to Dr. Deibert's office for a third appointment, but continued wearing the orthotic boot. Hastie wore the boot for almost three years, which resulted in foot, leg and back pain and difficulty walking. Hastie sued Dr. Deibert for medical malpractice and Consumer Protection Act violations, among other things. The case was tried to a jury in December 2014, and judgment was entered for Defendants. Hastie now appeals two of the District Court's pre-trial orders, one excluding testimony from Hastie's expert witness, and another granting Defendants' motion for partial summary judgment. The Defendants raise two issues on cross-appeal to be addressed only in the event we reverse and remand for a new trial. We affirm.

## ISSUES

¶2     We restate the issues on appeal as follows:

¶3     Did the District Court abuse its discretion by excluding Hastie's proposed expert witness, Dr. Hahn, on the grounds that Dr. Hahn is neither a medical doctor nor a doctor of osteopathy?

¶4     Did the District Court err in granting Dr. Deibert and Alpine summary judgment on Hastie's Consumer Protection Act claims?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶5　　David Hastie was injured in an all-terrain vehicle (ATV) accident on his girlfriend's father's property in late September or early October of 2010. He sustained fractures to the bones that make up the Lisfranc joint complex on his right foot. Hastie went to the Bozeman Deaconess Hospital for x-rays of his foot on October 4, 2010. After viewing the x-rays, Dr. Mary Drake of the Bozeman Deaconess Emergency Department referred Hastie to Alpine Orthopedics & Sports Medicine for evaluation and treatment of his foot. On October 4, 2010, Hastie saw Dr. Jeffrey Rasch of Alpine for an initial evaluation. Dr. Rasch suspected a Lisfranc injury and requested a CT scan of the area for further evaluation. Advanced Medical Imaging performed a CT scan of Hastie's right foot the next day. The CT scan revealed several fractures consistent with a Lisfranc injury. Hastie then met with Dr. Mark Deibert, an orthopedic surgeon at Alpine, about possible treatment options. Hastie elected to proceed with a surgical operation called "open reduction internal fixation of Lisfranc fracture-dislocation," which took place on October 7, 2010. Dr. Deibert placed screws in Hastie's foot during the surgery and was satisfied that the operation was successful.

¶6　　Hastie returned to Dr. Deibert's office on October 18, 2010, for his first post-operative appointment. Hastie's sutures were removed and the incision appeared to be healing well. X-rays revealed the foot bones were properly aligned. Hastie was given a removable orthotic boot and instructions to maintain non-weightbearing but continue range of motion exercises and return for a follow-up appointment in six weeks.

¶7     Hastie returned for an appointment with Dr. Deibert on November 29, 2010. At that appointment, Dr. Deibert noted that Hastie's incisions had healed well, that Hastie had been able to bear weight on his foot while in the orthotic boot, and that the screws in his foot remained properly aligned. In his notes about the visit, Dr. Deibert wrote, "I plan to have [Hastie] continue nonpainful weightbearing in the right lower extremity and follow up in six weeks for repeat evaluation."

¶8     What occurred during the next eighteen months is disputed. Hastie had hoped to obtain insurance coverage for the surgery through his girlfriend's father's homeowner's insurance policy, but was unsuccessful, leaving him solely responsible for the $9,001 bill. Hastie maintains that he made multiple attempts to schedule a third post-operative appointment with Dr. Deibert, but was not allowed an appointment until he paid the bill for his surgery. Dr. Deibert testified in his deposition that denying a patient post-operative care because of a billing issue would constitute sub-standard medical care, and that his office does not employ such practices. He testified at trial that he has never directed that a patient be turned away for failure to pay his bill.

¶9     Dr. Deibert's office maintains records of all patient communications, and his office recorded two phone calls with Hastie in early 2011. According to the call logs, Hastie inquired about the bill for his surgery, but did not attempt to make an appointment after November 29, 2010. Hastie never returned to Dr. Deibert's office for a third post-operative appointment. Dr. Deibert and another doctor testified at trial that physicians generally do not track patients down and insist on follow-up care; rather, it is the responsibility of the patient to schedule appointments.

4

¶10 Seventeen months after his last appointment with Dr. Deibert, Hastie went to see Dr. Jon Robinson of Bridger Orthopedic, complaining of pain in his right foot. Dr. Robinson examined Hastie on April 3, 2012, confirmed his medical history, and noted that the alignment of the foot was good and the hardware was still in place and intact. However, Dr. Robinson was concerned that Hastie was still wearing a boot and was still using narcotic pain medication 18 months post-surgery. Dr. Robinson discussed operative and non-operative treatment options with Hastie, and Hastie elected to have surgery to have the hardware removed from his foot.

¶11 Hastie did not contact Dr. Robinson's office about scheduling the surgery until February 28, 2013. The medical record generated on that day says, "[t]he patient had a previous lis franc injury. [H]e has been wearing a walking boot since last [A]pril. [T]he patient was scheduled for surgery but for financial reasons decided to hold off. He would like to have surgery soon and was wondering about coming out of the boot." Under "Assessment/Plan," Dr. Robinson wrote, "[t]he xray shows intact screws. The patient would like to have them removed and we will do that if he schedules. OK to come out of the boot. Risk of screw breakage was discussed."

¶12 Another six months passed before Hastie went in for surgery with Dr. Robinson. Dr. Robinson removed the screws in Hastie's foot on August 21, 2013, and performed follow-up care through October of 2013. On October 7, 2013, Dr. Robinson noted that Hastie is participating in rehabilitation and "making excellent progress," is no longer taking pain medication, and is "full weight bearing."

¶13   In the meantime, on October 9, 2012, Hastie filed suit against Dr. Deibert and Alpine for medical malpractice and Consumer Protection Act (CPA) violations.  Hastie alleged that Dr. Deibert refused to remove the hardware in his foot or the boot until Hastie paid for his surgery, and that as a result of Dr. Deibert's breach of the standard of care, Hastie was forced to wear a boot for the intervening years, which resulted in degenerative back pain and difficulty walking.  Hastie also alleged that Dr. Deibert and Alpine engaged in unfair and deceptive practices, in violation of the CPA.  Hastie now appeals two of the District Court's pre-trial orders, one excluding his expert witness, and one granting summary judgment to the Defendants on the Consumer Protection Act claims.  He does not otherwise appeal from the jury verdict.  Additional facts will be discussed as necessary in the following analysis.

**STANDARD OF REVIEW**

¶14   We review a district court's rulings on the admissibility of expert testimony for abuse of discretion. *McClue v. Safeco Ins. Co.*, 2015 MT 222, ¶¶ 8-14, 380 Mont. 204, 354 P.3d 604 (citing *Beehler v. E. Radiological Assocs., P.C.*, 2012 MT 260, 367 Mont. 21, 289 P.3d 131; *Harris v. Hanson*, 2009 MT 13, ¶ 18, 349 Mont. 29, 201 P.3d 151).

¶15   We review a district court's entry of summary judgment de novo. *McClue*, ¶ 8 (citing *Albert v. City of Billings*, 2012 MT 159, ¶ 15, 365 Mont. 454, 282 P.3d 704). "Summary judgment is appropriate when the moving party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law." *Albert*, ¶ 15.  "A material fact is a fact that involves the elements of the cause of action or defenses at issue to an extent that necessitates resolution of the issue by a trier

6

of fact." *Williams v. Plum Creek Timber Co.*, 2011 MT 271, ¶ 14, 362 Mont. 368, 264 P.3d 1090 (internal quotation marks omitted) (citing *Arnold v. Yellowstone Mountain Club, LLC*, 2004 MT 284, ¶ 15, 323 Mont. 295, 100 P.3d 137).

**DISCUSSION**

¶16    *Did the District Court abuse its discretion by excluding Hastie's proposed witness, Dr. Hahn, on the grounds that Dr. Hahn is neither a medical doctor nor a doctor of osteopathy?*

¶17    In support of his medical malpractice claim, Hastie sought standard of care testimony from Dr. John Hahn, a podiatrist formerly licensed in Oregon.  Defendants filed a motion in limine to exclude testimony from Hastie's proposed expert witness on the grounds that Montana law precludes a podiatrist from offering standard of care testimony in a medical malpractice case against an orthopedic surgeon.  The District Court granted Defendants' motion, and did not abuse its discretion in so doing.

¶18    The District Court relied on § 26-2-601(2), MCA, to exclude proposed testimony by Dr. Hahn.  This statute, entitled "Medical malpractice expert witness qualifications," provides: "If the malpractice claim involves treatment that is recommended or provided by a physician as defined in 37-3-102, a person may not testify as an expert witness with respect to issues of negligence or standards of care and practice concerning the treatment unless the person is also a physician."  Section 26-2-601(2), MCA.  A physician is defined in § 37-3-102(11), MCA, as "a person who holds a degree as a doctor of medicine or doctor of osteopathy and who has a valid license to practice medicine or

7

osteopathic medicine in this state."[1]  Under the statutory definition, Dr. Deibert is a "physician" because he holds the degree of doctor of medicine.  Dr. Hahn is not a "physician" because he is neither a doctor of medicine nor a doctor of osteopathy, but rather a doctor of podiatric medicine.  Thus, Dr. Hahn is statutorily unqualified to offer negligence or standard of care testimony against Dr. Deibert in this medical malpractice case.  The District Court did not abuse its discretion in excluding Dr. Hahn's testimony against Dr. Deibert.

¶19  *Did the District Court err in granting Dr. Deibert and Alpine summary judgment on Hastie's Consumer Protection Act claims?*

¶20  Hastie alleged in his complaint that Defendants violated the CPA and "engaged in unfair or deceptive acts or practices in the conduct of [their] trade or commerce." Defendants moved for summary judgment on the CPA claims on the grounds that Hastie's allegations are directed at Dr. Deibert's practice of medicine, and thus recovery is unavailable under the CPA.  Hastie responded that his CPA claims are based upon Defendants' "entrepreneurial dealings" with patients.  He alleged that Dr. Deibert failed to provide him with the information necessary to make a decision regarding the "purchase" of the surgery and failed to properly instruct him in post-surgery treatment, and that Alpine engaged in billing practices that barred patients from the office due to an

---

[1] Dr. Hahn is not a medical doctor, so he is unqualified to render expert testimony in this case, regardless of which state licensed him as a podiatrist.  However, we encourage the Legislature to revisit the distinction between a "physician" for purposes of licensing in Montana and a "physician" for purposes of qualification to give expert testimony.  The cross-referencing of § 37-3-102(11), MCA, in § 26-2-601(2), MCA, could be read as imposing upon testifying experts in medical malpractice cases a requirement that they be licensed to practice medicine in Montana, which we do not believe was the Legislature's intent.

unpaid account. The District Court concluded that Hastie's theories about how Dr. Deibert and Alpine violated the Consumer Protection Act are premised upon allegations of professional negligence and are consequently exempt from the CPA. The District Court granted Defendants' motion for summary judgment on the CPA claims. We affirm.

¶21 Montana's Consumer Protection Act prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Section 30-14-103, MCA. The CPA defines "trade" and "commerce" to mean "the advertising, offering for sale, sale, or distribution of any services, any property, tangible or intangible, real, personal, or mixed, or any other article, commodity, or thing of value, wherever located . . . ." Section 30-14-102(8), MCA.

¶22 Only once have we addressed the availability of CPA claims in a professional negligence case against a medical provider. In that case, we held that "only those acts or practices in the conduct of the entrepreneurial, commercial, or business aspects of running a [medical practice] are actionable under Montana's CPA." *Brookins v. Mote*, 2012 MT 283, ¶ 54, 367 Mont. 193, 292 P.3d 347. We "agree[d] with the near unanimous line of authority that has exempted from the CPA conduct by health-care providers in the 'actual practice' of the profession," and we found that "failing to exempt professional negligence in the course of the 'actual practice' of medicine could render medical malpractice law 'obsolete.'" *Brookins*, ¶ 54. In *Brookins*, we distinguished between a hospital's credentialing of a doctor and a hospital's billing or advertising

9

practices, and found that the former was not entrepreneurial, commercial, or business-related, while the latter were. *Brookins*, ¶ 55.

¶23  In this case, Hastie's theories about how Dr. Deibert's and Alpine's treatment of him constituted unfair and deceptive practices stem from alleged acts of professional negligence.  Hastie claims that Dr. Deibert refused him post-operative care, ostensibly because Hastie had not yet paid his bill.  But the alleged refusal of medical care, for whatever reason, falls squarely within the realm of professional negligence.  In fact, Hastie's attorney approached this claim as a professional negligence issue during Dr. Deibert's deposition.  Dr. Deibert was asked "[w]ould it be below the standards of care for a practitioner to refuse postsurgical followup to a patient because they have an outstanding bill?" and Dr. Deibert replied, "I believe it would be."  Hastie's allegation that Dr. Deibert refused him follow-up medical care is not related to the entrepreneurial, commercial, or business aspects of running a medical practice, and it is thus exempt from the CPA. *Brookins*, ¶ 54.

¶24  As noted, Hastie supported his CPA claim with an allegation that Dr. Deibert failed to provide him with the information necessary to make an informed decision regarding the "purchase" of the surgery.  But Hastie cannot transform a professional negligence claim into a Consumer Protection Act claim simply by using the word "purchase."  Any dispute Hastie has with Dr. Deibert about informed consent regarding the surgery would fall within the realm of professional negligence, not trade or commerce. *See e.g. Zimmerman v. Robertson*, 259 Mont. 105, 112, 854 P.2d 338, 342 (1993) ("We note only that the cases generally support the proposition that a medical

10

malpractice claim premised on a theory of lack of informed consent is a separate cause of action rather than an 'element' in an otherwise specifically alleged claim of professional negligence . . . . [In previous cases, plaintiffs have] sought personal injury damages based, alternatively, on alleged surgical negligence, alleged negligence in post-operative care, and an alleged negligent failure by the doctor to disclose the risks inherent in the operation."). Hastie's allegation that Dr. Deibert did not adequately inform Hastie about the risks of and alternatives to surgery is likewise not related to the entrepreneurial, commercial, or business aspects of running a medical practice, and it is thus exempt from the CPA. *Brookins*, ¶ 54.

¶25 Though there was some dispute about what occurred after Hastie's final appointment with Dr. Deibert, these disputed facts do not bear on our resolution of the CPA cause of action and therefore do not require resolution by the trier of fact. *Williams*, ¶ 14. Since the disputed facts in this case are not material to the CPA cause of action and Defendants are entitled to judgment on the CPA claims as a matter of law, the District Court did not err in granting Defendants' motion for partial summary judgment.

## CONCLUSION

¶26 For the foregoing reasons, we affirm the District Court's November 7, 2014 Order granting Defendants' motion in limine to exclude Plaintiff's expert, and the District Court's July 23, 2014 Order granting Defendants' motion for partial summary judgment.

/S/ PATRICIA COTTER

11

We concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT
/S/ JIM RICE