

DA 13-0635

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 71

ERIC LANCE WHARY, WILLIAM TIEGS,
and DONNA TIEGS,

        Plaintiffs and Appellants,

   v.

PLUM CREEK TIMBERLANDS, L.P.,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                      In and For the County of Flathead, Cause No. DV 11-332
                      Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Noah H. Bodman, Tammi E. Fisher; Fisher & Bodman, PC;
                Kalispell, Montana

        For Appellee:

                Kimberly S. More, Mark Stermitz; Crowley Fleck, PLLP;
                Kalispell, Montana

                      Submitted on Briefs:  February 19, 2014
                               Decided:  March 18, 2014

Filed:

                                Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Eric Lance Whary, William Tiegs, and Donna Tiegs (Plaintiffs) appeal from an order of the Eleventh Judicial District Court, Flathead County, denying their motion for partial summary judgment and granting Plum Creek Timberlands, L.P.'s (Plum Creek) motion for summary judgment. We reverse and remand.

## ISSUES

¶2 A restatement of the issues on appeal is:

¶3 *1. Did the District Court err in granting Plum Creek's motion for summary judgment?*

¶4 *2. Did the District Court err in finding that the scope of the easement was not limited to logging operations?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 This dispute involves real property located in Flathead County; specifically, it involves an easement located in lots 8 and 9 of Section 3 and in the southwest and southeast quarters of Section 2, Township 27 North, Range 22 West, P.M.M. In March 1972, Phyllis E. Hudson and Clarence G. Hudson granted an easement to Burlington Northern, Inc. Plaintiffs are the successors in interest to the Hudsons. Plum Creek is a successor to Burlington Northern, Inc. The easement is a road or driveway that runs north from Haywire Gulch, a public road, to Plum Creek's property, crossing Plaintiffs' property. Since the 1980s, Plum Creek employees and contractors have used the

easement to conduct road inspections, road construction, slash burning, timber cruising, logging operations, and real estate activities.

¶6 According to the District Court's order, the "North Gate" is located on Plum Creek's property above the property line with Whary. This was apparently confirmed by a 2011 survey. In his deposition, Whary testified that "[t]he gate swings both ways," and that "the arm was in [his] property" when he decided to lock the gate in 1999. He never gave Plum Creek a key to the lock. Steve Perrone, a Plum Creek employee, first encountered the locked gate in 2009 and unsuccessfully demanded that Whary remove the lock. Whary also placed rocks, gravel, and a large boulder in front of the gate. He contends that he "blocked off . . . 40 feet" of the easement and "used it for storage of material."

¶7 Plaintiffs filed a complaint against Plum Creek in March 2011 to extinguish the scope of the easement. Plaintiffs subsequently amended their complaint in May 2011 and March 2013. The second amended complaint raised four claims for relief: extinguishment of the easement due to the non-assignment provision; extinguishment of the easement due to non-use; extinguishment by reverse adverse possession; and limitation on use of the easement. Only the second and fourth claims are at issue in this appeal. On April 30, 2013, Plaintiffs filed a motion for partial summary judgment only as to the fourth claim, seeking to limit Plum Creek's use of the easement to logging activities. On May 14, 2013, Plum Creek filed a motion for summary judgment on the entire complaint. After additional briefing on both motions, the District Court entered an

order denying Plaintiffs' motion for partial summary judgment and granting Plum Creek's motion for summary judgment. Plaintiffs timely appealed.

## STANDARD OF REVIEW

¶8 We review de novo a district court's grant or denial of summary judgment, applying the same criteria of M. R. Civ. P. 56 as a district court. *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839 (citation omitted). We review a district court's conclusions of law to determine whether they are correct and its findings of fact to determine whether they are clearly erroneous. *Pilgeram*, ¶ 9 (citation omitted).

## DISCUSSION

¶9 "An easement is a nonpossessory interest in land—a right which one person has to use the land of another for a specific purpose or a servitude imposed as a burden upon the land." *Mattson v. Mont. Power Co.*, 2009 MT 286, ¶ 16, 352 Mont. 212, 215 P.3d 675 (citation omitted). Here, the easement was created by a written instrument. Generally, "where the creating words of a deed make the scope and the location of an easement perfectly clear, there is no need for further inquiry." *Guthrie v. Hardy*, 2001 MT 122, ¶ 46, 305 Mont. 367, 28 P.3d 467. "[I]f the grant or reservation is specific in its terms, it is decisive of the limits of the easement." *Mattson*, ¶ 17 (quoting *Guthrie*, ¶ 46). However, "where the grant or reservation is general in its terms, courts must look beyond the language of the deed in determining the breadth and scope of the servitude, which

4

need only be such as is reasonably necessary and convenient for the purpose for which the easement was created." *Mattson*, ¶ 17 (citing *Guthrie*, ¶ 47).

¶10 The rules of contract interpretation govern the construction of a writing granting an interest in real property. *Mattson*, ¶ 18 (citations omitted). The construction and interpretation of a contract is a question of law. *Mattson*, ¶ 18 (citations omitted). If possible, a contract must be interpreted to give effect to every part of the contract, and the intention of the parties must be ascertained from the writing alone. *Mattson*, ¶ 18 (citations omitted). "The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." *Mattson*, ¶ 18 (citing § 28-3-401, MCA). Evidence of the circumstances under which the contract was made may be admissible but may not be used to add to, vary, or contradict the terms of the contract. *Mattson*, ¶ 18 (citations omitted).

¶11 With these principles in mind, we turn to Plaintiffs' contentions.

¶12 *1. Did the District Court err in granting Plum Creek's motion for summary judgment?*

¶13 The easement in question included the following language regarding termination in the event of non-use:

> If for a period of five (5) years the Grantee shall cease to use, or preserve for prospective future use, the road, or any segment thereof, for the purposes granted, or if at any time the Grantee determines that the road, or any segment thereof, is no longer needed for the purposes granted, the easement traversed thereby shall terminate.

5

¶14 Plaintiffs contend that though portions of the granting document are ambiguous, this section is not. Plaintiffs argue that the District Court did not address the language concerning failure to use or preserve "any segment" of the road, thereby failing to give meaning to all of the written terms of the agreement as required by § 28-2-905, MCA. They further argue that because they submitted evidence that, for a period in excess of five years, use of the easement was impeded by the locked gate, boulder, rocks, and gravel, there was an issue of material fact as to whether the easement had terminated. Plum Creek counters that it is irrelevant "[w]hether or not the Plum Creek gate was locked or whether Whary placed a pile of gravel or boulders at the north end of the Easement" because Plum Creek used the easement numerous times over the years.

¶15 We conclude the District Court erred when it failed to give meaning to the phrase "or any segment thereof," as required by § 28-3-202, MCA. Section 28-3-202, MCA ("The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other."). Plum Creek has not disputed that a segment of the easement was obstructed for a period of over five years, nor has it addressed the clear language of the granting document that addresses failure to use "any segment" of the easement. Viewing Plaintiffs' evidence regarding the obstructed easement in the light most favorable to them as the nonmoving party, we conclude the District Court erred in granting Plum Creek's motion for summary judgment.

¶16    *2. Did the District Court err in finding that the scope of the easement was not limited to logging operations?*

¶17    The easement was originally granted for "ingress and egress over and across said road, said rights to be exercised in a manner that will not interfere with the use of the road by Grantee." The District Court concluded that Plum Creek "has established that the easement is general in nature, that the original Grantor's property was developed into a residential use, and there is no legal justification to limit Plum Creek's present or prospective use to only logging operations." Plaintiffs argue that the District Court erred in relying upon the historical uses of the easement within the *servient* estate to determine the easement's scope; rather, it is the historic use of the dominant estate that is determinative. We agree with Plaintiffs on this point. *See* Section 70-17-106, MCA ("The extent of a servitude is determined by the terms of the grant or the nature of the enjoyment by which it was acquired."); *Ashby v. Maechling*, 2010 MT 80, ¶ 38, 356 Mont. 68, 229 P.3d 1210 (citing *Tungsten Holdings v. Kimberlin*, 2000 MT 24, ¶ 27, 298 Mont. 176, 994 P.2d 1114) (This Court has "endorsed the concept that a decision on the scope of an implied easement should consider 'the actual uses being made [of the dominant estate] at the time of the severance, such uses as the facts and circumstances show were within the reasonable contemplation of the parties at the time of the conveyance, and such uses as the parties might reasonably have expected from future uses of the dominant tenement.'"); *Mason v. Garrison*, 2000 MT 78, ¶¶ 22, 24-27, 299 Mont. 142, 998 P.2d 531 (The Court analyzed the extent of the easement "with a view to

7

the situation of the property and the surrounding circumstances," especially evidence of the historical use of the dominant estate.). Plaintiffs further argue that the scope of the easement must be limited to the sporadic logging related activities historically conducted by Plum Creek. Plum Creek counters that the District Court correctly concluded that it consistently used, preserved, and maintained the easement, and that the record establishes that the original grantors of the easement never intended to limit the easement's scope to a particular activity.

¶18 Because we reverse under Issue One, we also reverse the court's finding regarding the scope of the easement, which is a question of fact to be determined by the finder of fact on remand of this case. *See Guthrie*, ¶ 47 (what may be considered a reasonable use of a general easement is usually a question of fact to be determined in light of the situation of the property and the surrounding circumstances).

## CONCLUSION

¶19 For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT

8