FILED

12/10/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0102

DA 23-0102

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT298N

---

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

LAWRENCE JOHN JAKUB,

      Defendant and Appellant.

---

APPEAL FROM:   District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 21-211
Honorable Howard F. Recht, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Tammy Hinderman, Appellate Defender, Charlotte Lawson, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Tammy K Plubell, Assistant Attorney General, Helena, Montana

          William E. Fulbright, Ravalli County Attorney, David Lakin, Deputy County Attorney, Hamilton, Montana

---

Submitted on Briefs:  October 30, 2024

Decided:  December 10, 2024

Filed:

_____
          Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Lawrence John Jakub appeals the Twenty-First Judicial District Court's order denying his motion to suppress and his subsequent conviction. We affirm.

¶3 On October 27, 2021, at approximately 1:20 a.m., Hamilton Police Officers Michael Eldridge and Neil Honkala responded to a call from the clerk at the Bitterroot River Inn. The clerk said that Jakub had been acting suspiciously in the hotel lobby before returning to his vehicle in the parking lot and told the officers that she wanted him trespassed from the property. The officers found Jakub sitting in the driver seat of his vehicle in the hotel parking lot. Eldridge approached the driver's side of the vehicle and told Jakub that his behavior had made the clerk nervous. Jakub offered to leave.

¶4 Before Eldridge could advise Jakub that he was trespassed from the hotel property, Honkala approached the passenger side of the vehicle and shined his flashlight through the closed window. He saw a glass pipe sitting on top of a backpack on the passenger-side floor. He mouthed his discovery to Eldridge, who swapped sides with him and used his flashlight to verify the location of the pipe. Honkala reminded Jakub that he was trespassed from "every casino in Ravalli County" and notified him that he was being trespassed from

the hotel property. Eldridge told Jakub to wait for him and Honkala to talk before leaving, and both officers stepped away from the vehicle.

¶5 The officers discussed the pipe and where to send Jakub, knowing that he was trespassed for similar behavior from several places in the area and concerned about their observation of severe damage to his windshield. Eldridge approached the driver's side a second time, told Jakub that he had seen the pipe, and asked him whether they had his permission to seize the pipe as an alternative to impounding Jakub's vehicle. Jakub consented to the seizure, and when the pipe tested positive for methamphetamine, the officers arrested him.

¶6 The State charged Jakub with Criminal Possession of Dangerous Drugs and Criminal Possession of Drug Paraphernalia. Jakub moved to suppress "all evidence obtained from the warrantless search" of his vehicle, arguing that his consent to the search had been coerced and that the officers lacked particularized suspicion of any crime sufficient to extend the scope of the stop beyond that necessary to effectuate the trespass order. On May 10, 2022, the District Court held an evidentiary hearing on the motion to suppress. As Honkala was by then deceased, Eldridge was the only officer who testified at the hearing. The District Court denied the motion to suppress, holding that Jakub's consent was not unlawfully coerced and that the officers had particularized suspicion to extend the scope of the stop based on their "training and experience." On November 22, 2022, a Ravalli County jury convicted Jakub on both counts.

¶7 We review a district court's ruling on a motion to suppress to determine whether the court's findings of fact are clearly erroneous and whether those findings were applied correctly as a matter of law. *State v. O'Howell*, 2024 MT 209, ¶ 16, 418 Mont. 121, 556 P.3d 534 (citation omitted). A finding is clearly erroneous only if it is not supported by substantial credible evidence, if the trial court misapprehended the effect of the evidence, or if review of the record gives the Court a firm conviction that the trial court made a mistake. *O'Howell*, ¶ 16 (citation omitted).

¶8 Jakub argues that the District Court erred when it held that the officers had not exceeded the scope of their reasonable suspicion when they (1) temporally extended the stop past Jakub's offer to leave and (2) shined a flashlight into Jakub's vehicle without any reason to believe the contents of his vehicle were relevant to the trespass order.

¶9 The State argues that Jakub failed to raise these arguments before the District Court, so he is foreclosed from raising them here. Generally, we do not address an issue raised for the first time on appeal or a party's change in legal theory. *Wicklund v. Sundheim*, 2016 MT 62, ¶ 26, 383 Mont. 1, 367 P.3d 403 (citing *State v. Montgomery*, 2010 MT 193, ¶ 11, 357 Mont. 348, 239 P.3d 929). This is because it is "unfair to fault the trial court on an issue it was never given the opportunity to consider." *Montgomery*, ¶ 11 (collecting citations). We have, however, "permitted parties to bolster their preserved issues with additional legal authority or to make further arguments within the scope of the legal theory articulated to the trial court." *Wicklund*, ¶ 26 (quoting *Montgomery*, ¶ 12).

¶10 As the State concedes, Jakub did argue before the District Court that the officers "did not have particularized suspicion to extend the trespass report into a drug investigation." The District Court held in response that "the officers had the ability to expand the scope of their investigation" based on their training and experience. The State argues that holding was in the context of its "inevitable discovery" argument, but no matter the context, the District Court clearly had the opportunity to consider the argument. Jakub's argument on appeal is within the scope of his argument to the trial court that the officers exceeded the scope of their particularized suspicion.

¶11 Article II, Section 11, of the Montana Constitution and the Fourth Amendment to the United States Constitution protect individuals from unreasonable searches and seizures. Montana's Constitution provides broader privacy protection relative to the United States Constitution. *See State v. Noli*, 2023 MT 84, ¶ 28, 412 Mont. 170, 529 P.3d 813. A temporary investigative stop, or *Terry* stop, is a recognized exception to the Fourth Amendment and Article II, Section 11 warrant and probable cause requirements. *Noli*, ¶ 30 (citing *Terry v. Ohio*, 392 U.S. 1, 15-16, 88 S. Ct. 1868, 1876-77 (1968)). Under this narrow exception, a peace officer may stop a vehicle or person when there exists "a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." Section 46-5-401(1), MCA; *see also Noli*, ¶ 30. "Thus, on a valid . . . stop, the tolerable duration of police inquiry is limited to the time necessary to address the . . . violation and *any related safety concerns*." *State v. Panasuk*, 2024 MT 113, ¶ 14, 416 Mont. 430, 549 P.3d 432 (emphasis added). Although

an officer is required to "diligently pursue[]" his or her investigation to prevent "unnecessary delay," it is reasonable for an officer to take a brief period to ask for "an explanation of the person's actions" as they relate to the reason for the stop. *Noli*, ¶¶ 33-34.

¶12   Jakub argues that the officers unlawfully extended the duration of the trespass stop after he offered to leave the hotel parking lot, citing our decision in *State v. Spottedbear*, 2016 MT 243, 385 Mont. 68, 380 P.3d 810. Jakub asserts that *Spottedbear* stands for the proposition that a person's offer to leave a location dispels any reasonable suspicion that they intend to remain in that place unlawfully. In *Spottedbear*, an officer notified Spottedbear that his license to be in a Wal-Mart store was revoked, and Spottedbear was on his way out of the store when the officer arrested him. *Spottedbear*, ¶ 3. Spottedbear was charged with, and convicted of, trespass. *Spottedbear*, ¶¶ 5-6. We reversed Spottedbear's conviction for trespassing because the State had the burden to demonstrate that Spottedbear remained unlawfully in the store after learning that his license had been revoked. *Spottedbear*, ¶ 39.

¶13   Jakub's reliance on *Spottedbear* is misplaced. *Spottedbear* makes clear that a person knowingly remains unlawfully *once notified* that his or her license to be at a location is revoked. *See Spottedbear*, ¶ 39 ("Officer Walker testified that *after asking Spottedbear to leave*, Spottedbear walked towards the exit.") (emphasis added). Officer Honkala did not notify Jakub that he was trespassed from the hotel parking lot until after he already had seen the pipe in the vehicle. From the time that Eldridge initiated contact with Jakub to the time that Honkala notified him he was trespassed from hotel property was just over three

6

minutes. During that period, Eldridge asked Jakub a few brief questions about where he would go once he left, and Honkala reminded him that he was not permitted on casino property in the county. The officers had not fully resolved the trespass stop until after they notified Jakub that he was trespassed, and their questions were directly related to the reason for the stop. They did not unlawfully extend the duration of the stop when they continued to question Jakub after he offered to leave.

¶14 Jakub argues that Honkala nonetheless exceeded the scope of the trespass stop when he shined his flashlight into Jakub's vehicle. Jakub contends that nothing in the passenger seat of his vehicle could have been relevant to whether he would remain unlawfully after being trespassed. But this argument overlooks that an officer also may investigate any safety concerns related to the stop without exceeding its scope. *O'Howell*, ¶ 26. We have cited *Rodriguez v. United States*, 575 U.S. 348, 135 S. Ct. 1609 (2015), for the proposition that officers may take "negligibly burdensome" steps to ensure their own safety during a stop as long as they are "reasonably diligent in pursuing . . . the purpose of the stop." *Noli*, ¶¶ 38-39; *see State v. Bailey*, 2021 MT 157, ¶ 37, 404 Mont. 384, 489 P.3d 889.

¶15 Honkala's decision to shine his flashlight into the window did not burden Jakub by extending the duration of the stop or requiring him to leave his vehicle. Honkala did not prolong the stop, as he looked into the vehicle while Eldridge was questioning Jakub about where he would go once he left the parking lot. Jakub does not argue that either Honkala or Eldrige acted unlawfully when they approached the vehicle to speak with him. He cites no authority that an officer conducts an impermissible warrantless search by observing

what is in plain sight through a vehicle's window during a lawful stop. *See e.g., State v. Tenold*, 2020 MT 263, ¶¶ 11-12, 401 Mont. 532, 474 P.3d 829 ("a lawfully present officer" did not violate the defendant's rights when he seized contraband he observed fall onto the driver's lap during a traffic stop). Though the District Court did not elaborate on the officers' training and experience that it found important, the court did not err when it held that Honkala's brief view into the passenger-side window of Jakub's vehicle did not exceed the scope of the lawful stop. Honkala did not prolong the stop, and he acted reasonably to ensure officer safety.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. The District Court's judgment is affirmed.

/S/ BETH BAKER

We Concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ JIM RICE